The last case this morning is Lopez v. Barr. Good morning. Good morning, Your Honors. May it please the Court. Budzinski on behalf of the petitioners. The present case involves the denial of three applications. Asylum, withholding of removal under the Immigration and Nationality Act, and withholding of removal under the Convention Against Torture. I'll begin with the first two. Petitioners are eligible for asylum and withholding of removal on the basis of past persecution and future persecution. As to past persecution, petitioners returned to the United States in June of 2015 from Mexico after receiving threats and suffering a kidnapping attempt while in Mexico. During the kidnapping incident, two men had guns pointed at Ms. Pomposo's head while a third tried to kidnap her daughter, Ariella. These men threatened petitioners on behalf of a man named Sergio. Sergio is the nephew of Mr. Hernandez, who is the father of the children here and the partner of the lead petitioner, Ms. Pomposo. This occurred because Mr. Hernandez was going to the police in the United States. Petitioners and Mr. Hernandez had reported threatening messages to law enforcement that they received from Sergio's girlfriend on Sergio's behalf, following Ariella's report that she had been sexually abused by Sergio. Petitioners also received a threatening phone call in Mexico indicating that Ms. Pomposo should be careful with her children because children can go missing and turn up without organs. These incidents arise to the level of persecution. Threats of an immediate and menacing nature are sufficient, and there's little that's more menacing and immediate than having a gun pointed at your head. This persecution occurred on account of four particular social groups that petitioners proposed. The Immigration Judge and the Board of Immigration Appeals did not address whether these are cognizable groups, but rather focused on nexus. Counsel, can I ask you to skip ahead and talk about the future persecution aspect? Sure. As to future persecution, the Immigration Judge and the Board of Immigration Appeals found that Ms. Pomposo satisfied the subjective component but not the objective component. Petitioners' fears are reasonable. During the most egregious incident, again, they had two men pointing guns at their head. The persecutors already found them once in Mexico, and Ms. Pomposo's father continued to receive calls for her after they'd left and returned to the United States. But they weren't threatening calls, right? I'm not sure that's in the record. I thought what the record was was that they asked for her and then would hang up. Right. That's what I'm understanding as well. And they anticipate the same or worse upon return. In the country conditions evidence that was submitted shows considerable crime, impunity, and low rates of prosecution in Mexico. The Immigration Judge concluded that they did not satisfy the objective inquiry for four reasons. One, because they had not heard from those threatening them since returning to the United States. Two, because Ariella had recanted her allegations. Three, because petitioners' relatives did not receive threats in Mexico. And four, because case law provides that vague and speculative testimony is insufficient. As to the first reason here, while petitioners have not heard from anyone since returning to the United States, that's exactly why they returned here. They returned here hoping and thinking that this would avoid the problem and threats that they were receiving in Mexico, and that worked out. Counsel, did they go back? Because that's when she was stopped coming into Laredo, right? So they returned to Mexico at some point after this? I think they might have been stopped at the border and given a voluntary return, and they tried to come back in. I'm not sure. There's multiple entries by Ms. Pomposo. The timeline of events is they received some threats here in the United States. They left because they thought things would be better for them in Mexico. It was not when the kidnapping incident occurred when they decided they needed to come back to the United States. And I'm not sure off the top of my head what happened at the border there. But that was the point of entry that we're talking about now, where they were detained. Correct. Second, Ariella recanted her allegations before they went back to Mexico. Recanting did not minimize the threat that they have of persecution in Mexico, given what did occur. They were threatened at gunpoint after recanting the allegations. Now, the nephew left Mexico, though, right? The nephew is now in the United States. I'm not sure the nephew was ever in Mexico. My understanding of the record is that he was able to send people to them in Mexico. Third and fourth. How old is he relative to the other kids? He's 10 years older or so, isn't he? The nephew? The nephew, I'm not sure of his age. I want to say he was in his 20s. 24, 25. So he's got a decade or more on the children, I believe. And he is the nephew of the father of the children. And third and fourth, Ms. Pomposa's father did receive calls after petitioner fled. Like you said, we don't know whether these were threatening calls or not. We do know that people were calling, asking, and then presumably hung up. And their testimony, I don't think, is vague or speculative. They already experienced the harm, or at least in the context of what they anticipate in the future. They've already experienced the harm that they anticipate unless they go back and it's worse. This time someone kills them or kidnaps them. And as discussed, crime impunity and low rates of prosecution are found throughout Mexico. They were already tracked down once there when they went to law enforcement. Law enforcement said, give us some money and we'll help you out. This isn't a filing fee they were asking for. This is evidence of the corruption and unwillingness of the law enforcement. Counsel, is the children's father here lawfully? No. So he's not able to try to pursue any kind of relief for the children? No. I misunderstood that. I, for some reason, thought he was at least a legal resident. I believe it came out in the record that he was not there in his status. Additionally, as to the internal relocation or being able to avoid persecution in Mexico, this is a nephew we're talking about. We're talking about a family member. And as Ms. Pomposa testified, she believes because of that connection, this person is going to be able to find them in Mexico as he did indeed once. And again, the acts they experienced and the ones that they do anticipate in the future rise to the level of persecution. The IJ concluded that petitioners had not shown that the Mexican government is unwilling to protect petitioners. This is incorrect. Again, Ms. Pomposa did go to law enforcement. They did not help. They asked her for money. And the country condition evidence they submitted indicates that this isn't really something that might be surprising or one wouldn't expect. Corruption and impunity and, again, low rates of prosecution are found throughout the country. As to withholding a removal under the Convention Against Torture, the agency concluded that the harm petitioners experience and anticipate does not meet the high standard of torture. However, as discussed, what they do anticipate is going to cause severe physical or mental pain and suffering. And whoever is going to be inflicting this is going to do so intentionally. This is apparent from the harm they anticipate. That's not something that people do. But torture is a really high standard. It is a high standard, but I think what they anticipate is that someone is going to kill them or kidnap them in Mexico, and I think that meets that standard. What about the complicity of the government? I mean, I recognize that the policeman that she encountered asked for bribes, but you need to show more than that for purposes of cat relief. Well, sure. They went to the law enforcement. They asked for help. They did ask for bribes. Our argument here is that because they are aware of what's going on and they're refusing to do anything unless they're getting their bribe, then the government is in turn aware and acquiescing to the situation. The IJ also concluded that petitioners did not qualify for withholding a removal under the Convention Against Torture because evidence of generalized violence is not sufficient to make the claim. While I agree with that statement of law, that's not all we have here. We also have evidence about what they've already experienced in Mexico and also what they anticipate in the future, and there really isn't too much more anyone can present besides evidence of country conditions, what's happened to them in the past, and what's going to happen to them in the future and why they think that's going to happen. Counsel, do you want to save your time for rebuttal? Yes, thank you. Thank you. Ms. Taylor. I'm looking to see whether I should say good morning or good afternoon. So good afternoon, Your Honors, Counsel. My name is Margaret Cuney Taylor. I represent the government in this matter. I had anticipated beginning with a legal argument, but I think I need to clarify a few facts first. So the harm that occurred here occurred both in the United States and in Mexico, and the threat, the first threat, which happened right after Ms. Pomposo's partner and the little girl that could have been, that was probably sexually abused, went to the police, that first threat was actually very threatening. It was a text that Ms. Pomposo received, and the person that was texting her said she was the girlfriend of the nephew. Is this the go missing and the organs will be? No, this was later. That's why I think we need to go over the facts. So at this point, a little girl in the family, a nephew had moved in. A little girl in the family was acting strangely at school, and it turned out that she may have been sexually abused, and they went to the police. And after they went to the police, seven months later, Ms. Pomposo received a threatening text, and it was not an innocent text as was said earlier. And in the text, there was a threat that this person was the girlfriend of the nephew who could have sexually abused the child. You can see there's a lot of problems in this family, and they said, I'm going to harm you either in the U.S., and if you go back to Mexico, I'm going to harm you there. So she threatened harm both in the United States and in Mexico. There were other infidelities in the partnership, and ultimately Ms. Pomposo and the children left the U.S. First they went to a shelter, and then they left the U.S. and went to Mexico. And in Mexico, there was an in-person threat, and there were further threats. At the same time, the domestic partner that remained in the U.S. received the same kind of text messages that Ms. Pomposo had received earlier about threats and about ugly... But, you know, threatening to abduct the child using a gun, I mean, that's pretty significant, right? It's very troubling. So tell me why you think that falls short of persecution. Well, it's very troubling, but it's consistent with this court's jurisprudence to say that that is not persecution. For example, in the case Bejko, which is cited in the briefs, there was a two-week detention, confinement in a small cell, inadequate food, inadequate toilet, a threat of a home bombing, gunshots in the yard, masked soldiers in the yard, a stolen van, and an interrogation. And the agency said that didn't rise to the level of persecution. And that's a lot worse than this other threat that was never executed. And I take your point. Very frightening, but it's consistent with this court's jurisprudence that it does not rise to the level of persecution. Is it significant that there were threats received both in the United States and Mexico? It is significant. Because if you're seeking safe haven in the same country where you've been threatened, it doesn't make much sense. Well, what about the argument that they can rely on protection from American law enforcement and they can't from Mexican law enforcement? That's an excellent question because they also sought protection in the United States from the police and did not ever get it. So the first time when they went with the little girl, the little girl ended up recanting, and so the police didn't pursue it further. The second time, Ms. Pomposa, when she received texts, she went to the police again. The police told her that she would have to wait for a subsequent text, that they couldn't investigate based on the text she gave them. And she left the country before there was a subsequent text, so she didn't get protection then. The third time was when Ms. Pomposa was in Mexico and her partner was in the U.S., and he went to the police with a text, and he didn't get protection then either. So there's not a lot of evidence in the record that they are getting protection in the U.S. either. Now, granted, there was no incident in the U.S. that had a threat with a gun. All right. So I just wanted to see if there was a call. Excuse me. I'm going to run for my water. So I'd like to take some time to talk about the legal issue here. In order to demonstrate asylum, in addition to just showing that you've been harmed, you have to show that you were harmed on account of five grounds. And the ground that is important in this case is particular social group. And so to say that something horrible has happened and that you belong to a group isn't enough. You have to show that there's a link, that there's a nexus. But we've said that a family can be a particular social group. Well, first of all, that is such a provocative question because the social groups here are not pure family. The social groups that are identified are individuals who have reported crime or familial abuse or family members of individuals. And the other two social groups really don't work at all. But it's a provocative question because about 10 days ago, the Attorney General issued a decision in a matter of LEA where he decided that family groups are usually not particular social groups. So that brings into question this question. What level of deference would we owe that? Well, under Brand X, possibly a lot. But I don't think it really matters in this case anyway because the case was not decided on the cognizability of the social group. The case was decided on the question of nexus, whether there was this connection. In this case, the immigration judge and the board assumed cognizability and said there's just no connection. And what the decisions say is that all of this harm that happened wasn't because of the particular social groups that are identified but because of the family dysfunction, because of the intra-family disputes that are in this family. There are multiple infidelities. There's the sexual abuse problem. There's anger management problem. And it was really in pursuit of those problems that this ultimate threat in Mexico took place. I see I only have one minute left, so I would like to just say a couple of things quickly. One is if the court happens to disagree with the government on the nexus question, which is the question in this case, then we would ask that you remand for the board and the immigration judge to decide social group cognizability. So you think that is the question? You don't think it's whether this rises to the level of persecution or whether there's an adequate threat in the future? I think that is obviously a question also, but I think it's clear-cut under this court's jurisprudence that a different result is not compelled, that the board and the IJ were absolutely within the scope of this court's jurisprudence, that it did not rise to the level of past persecution. Okay, so you're saying that you think the legal question is this nexus question, and you're not saying the most important question or the driving question. You're just distinguishing the factual and the legal. I'm just wondering why you said the question in this case is the nexus. Well, do you mind if I finish? No, please finish. And you're this late, too. So, no, there is a past persecution question. It's just that it's easily resolved using this court's jurisprudence, that, of course, these are very troubling things that happen in our society and throughout the world. But the question is, does it rise to the level of persecution? And under the jurisprudence, both the administrative jurisprudence and this court's jurisprudence, what happened here, as horrific as it is, is not persecution and certainly not torture. So that's that legal question. Okay. And what's left, which may be a little bit more difficult to decide, is the nexus question. So on that one, the government is also confident that there is no nexus to a statutory ground. But if the court disagrees, we ask that you remand so that the agency can look at cognizability of the social group. Okay. And post-LEA, especially, cognizability of the social group. Thank you, counsel. Could be thorny. And so thank you very much. We ask that you deny the petition for review. Thank you. Mr. Budensky, I'll give you an extra minute since the government had some more time. Thank you. The government is right. It did occur both in the United States and in Mexico, the threats. It was worse in Mexico. That's why they came back. Here, also, presumably they would be able to seek police protection. I can't remember the name of this case, but I think it's mentioned in the briefs where this case, this court gives an example of what would be sufficiently menacing or immediate to be a threat and constitute persecution. I think the example the court gives is pointing a gun, pulling the trigger while unbeknownst to the victim that it's unloaded. I believe that's mentioned in the briefs. Additionally, being able to imagine worse persecution than someone experienced is not a reasoned basis to deny an application for asylum. As to the particular social group, I'm glad LEA was brought up. That case has as its foundation the agency's particularity and social distinction requirements. This court hasn't had an opportunity to look at the agency's most recent decisions addressing those requirements, but in the past this court has disapproved of both of those requirements and has accorded no deference to those requirements. I believe WGAB sessions discusses that and some of the prior decisions as well. As to nexus, the agency said this was a personal family dispute, so it didn't think there was any nexus. However, every single proposed group we have has family as an element. I don't understand how you can think this is a family dispute  Thank you. Thank you, counsel. The case is taken under advisement, and that's it for today, so we are in recess. Thank you.